**In re Robert R. GREENBERG, Debtor.**

No. 800–83228–288.

United States Bankruptcy Court, E.D. New York.

Aug. 24, 2001.

Silverman Perlstein & Acampora, LLP, Jericho, NY, for debtor.

Neil H. Ackerman, Ackerman & Gallipoli, Westbury, NY, trustee.

## MEMORANDUM AND ORDER

STAN BERNSTEIN, Bankruptcy Judge.

### Background

The issue in this case is whether the primary creditor in the debtor's chapter 7 case may purchase from the trustee an assignment of his rights to pursue all existing or potential avoidance claims against the debtor's spouse.

On May 12, 2000, Robert R. Greenberg (Greenberg or debtor) filed a voluntary petition[1] for chapter 7 relief. The only creditors who timely filed proofs of claim were Aljo Consulting Corp. (Aljo), with a general unsecured claim of $179,451.30, and Chubb & Son Inc. and its related entities, Federal Insurance Company, Vigilant Insurance Company, Sea Insurance Company of America and Great Northern Insurance Company (collectively, Chubb), with general unsecured claims of $129,000,000.00. These claims arise from alleged breach of contract claims and claims for violation of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO) brought by Chubb and Aljo against the debtor in his capacity as the former principal of a public insurance adjustment entity known as Interstate Adjusters, Inc. (Interstate) which operated between 1979 and 1993. The debtor pled

---

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the General Reference to the Court under Rule 4 of the General Rules of the United States District Court for the Eastern District of New York. This is a core proceeding under 28 U.S.C. § 157(b)(2). This Memorandum and Order constitutes Findings of Fact and Conclusions of Law under Fed.R.Civ.P. 52 as made applicable by Fed. R. Bankr.P. 7052.

guilty to federal criminal charges of mail fraud and income tax evasion brought against him in his capacity as the principal of Interstate, and he currently is serving a federal prison sentence for these crimes. The conspiracy-to-defraud suit brought by Chubb and the breach of contract suit brought by Aljo are still pending. On January 5, 2001, this Court granted Chubb's motion to lift the automatic stay to permit Chubb to continue to litigate its RICO action against the debtor to judgment in the United States District Court for the Eastern District of New York, but allowing the automatic stay to remain in effect as to the enforcement of any subsequently obtained judgment pending further hearing before the Court.

█ Chubb has aggressively pursued postpetition litigation in this case by filing two separate actions (the Chubb/Leslie actions) in New York State court and in the United States District Court for the Eastern District of New York against the debtor's wife, Leslie Greenberg (Leslie) to recover alleged fraudulent conveyances by the debtor to her. An action to recover estate property becomes part of the debtor's bankruptcy estate and the right to pursue the claim on behalf of the estate properly vests solely in the bankruptcy trustee unless the trustee "abandons it or otherwise allows the creditors to pursue it independently." *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 436 (S.D.N.Y.1993), *aff'd,* 17 F.3d 600 (2d Cir.1994). On February 28, 2001, Chubb also filed an adversary proceeding (Adv.Proc. No. 901–8092–288) objecting to the debtor's discharge.

On April 3, 2001, Neil H. Ackerman, the chapter 7 trustee of the debtor's bankruptcy estate (Ackerman or trustee) filed in accordance with Federal Rules of Bankruptcy Procedure 2002 and 9019, a notice of presentment of a proposed Stipulation and Settlement of all claims against Leslie Greenberg for $150,000. The Stipulation included among its provisions that:

8. Leslie Greenberg is entering into this stipulation only on the condition that ...

— the Approval Order must expressly provide (and have the following conclusive effect) that it resolves all rights on the part of **each and every** creditor of the debtor to bring or continue avoidance actions against Leslie Greenberg, her businesses and professionals based on pre-Filing Date alleged transfers, including the Chubb Action ...

Stipulation at 4, ¶ 8.

On May 25, 2001, Chubb filed an Objection to the Stipulation (Chubb Objection), disagreeing with the trustee's assessment of the merits of and defenses to the fraudulent conveyance claims and offering to pay the trustee $175,000, "payable upon approval of that higher and better offer by the Court, for an assignment of and the right to prosecute the Claims". Chubb Objection at ¶ 9. The Objection included as an exhibit a letter addressed to the trustee from Chubb's counsel setting forth the formal terms of Chubb's offer which stated in relevant part:

Please be advised that Chubb hereby extends to the Trustee a higher and better offer, pursuant to 11 U.S.C. §§ 105 and 363, of $175,000 for the purchase from the Trustee and assignment by the Trustee to Chubb of all of the estate's rights, title and interest in all existing or potential avoidance claims against Leslie Greenberg, including but not limited to those for the recovery of money and property under claims or theories of fraudulent transfer, equitable lien and constructive trust.

Chubb Objection at Exhibit 1.

On June 4, 2001, counsel for Leslie Greenberg filed a Response to the Chubb

Objection (Response). In turn, on June 21, 2001, counsel for Chubb filed a Reply to Leslie's Response. On June 25, 2001, Leslie's counsel filed a second Response (Second Response). On July 3, 2001, the debtor filed a Supplemental Response (Debtor's Response). On July 12, 2001, counsel for Chubb filed a second Reply (Second Reply) to the Debtor's Response.[2]

## Discussion

The only decisions at the level of the court of appeals in support of a chapter 7 trustee's ability to transfer avoidance powers to creditors come from the Ninth Circuit. In *In re Professional Investment Properties of America*, 955 F.2d 623 (9th Cir.1992), the Ninth Circuit held that "[i]f a creditor is pursuing interests common to all creditors or is appointed for the purpose of enforcement of the plan, he may exercise the trustee's avoidance powers." *Professional Investment Properties*, 955 F.2d at 626.

More recently, the Ninth Circuit reaffirmed and clarified this holding in *In re P.R.T.C. Inc.*, 177 F.3d 774 (9th Cir.1999). In this recent case, the chapter 7 trustees in consolidated cases assigned certain avoidance actions and fraudulent transfer actions to the estates' largest creditor after the trustees determined that their respective estates lacked sufficient funds to pursue these actions. Under the assignment, the creditor pursuing the claims was obligated to pay to the estate fifty percent of the net proceeds of any successful avoidance action. *Id.* Over an objection from the debtors, the bankruptcy court approved the assignment, which was upheld by the district court and affirmed on appeal by the Ninth Circuit. The court held:

The bankruptcy court can authorize a creditor to exercise [the trustee's avoidance] powers if: (1) the creditor is pursuing interests common to all creditors; and (2) allowing the creditor to exercise those powers will benefit the remaining creditors.

*Id.* at 782–83 (citations omitted). Contrary to the assertion made by counsel for Leslie in the Second Response, the Third Circuit's recent opinion in *In re Cybergenics Corporation*, 226 F.3d 237 (3d Cir.2000) made no finding whether a trustee's avoidance powers may be assets or property of a bankruptcy estate. Second Response at 8, ¶ 12. Although the Third Circuit did examine and discuss the Ninth Circuit's opinions in *P.R.T.C.* and *Professional Investment Properties*, it held that certain assets of the estate that had been sold in a court-approved asset sale to a third party did not include the trustee's avoidance powers, a fact that is not in dispute concerning the proposed sale in this case. *Cybergenics*, 226 F.3d at 244–45 ("Appellees cite [*P.R.T.C.* and *Professional Investment Properties* ] as standing for the proposition that avoidance powers may be sold. We do not necessarily agree with their assessment of these cases, but we need not reach this issue...")

While the Second Circuit has not yet addressed in a published decision whether a chapter 7 trustee's avoidance powers may be assigned or sold, at least one decision by a New York district court has found that a creditor may be assigned the rights to pursue the trustee's claims on behalf of the estate. In *In re Vogel Van & Storage, Inc.*, 210 B.R. 27 (N.D.N.Y.1997) *aff'd on other grounds*, 142 F.3d 571 (2d Cir.1998), the chapter 7 trustee of a con-

---

2. It should be noted that neither party sought leave from this Court to file any of the papers dated June 25, 2001, and thereafter. This incessant pleading passed far beyond the bounds of reasonableness, and both counsel have abused the good offices of this Court in so filing.

verted chapter 11 case filed an adversary proceeding to recover an alleged preferential transfer of $347,409.80 to a creditor, Navistar Financial Corporation. After the bankruptcy court ruled for Navistar, finding that the transfer was made in the ordinary course of business, the trustee filed a notice of appeal and then offered to settle the appeal with Navistar for $45,000. *Vogel,* 210 B.R. at 31. However, Key Bank, the largest single creditor of the estate, objected to the appeal and then offered to pay the trustee $45,000 in exchange for the trustee's agreement to abandon the settlement attempt and for the trustee's authorization of Key Bank to litigate the appeal on behalf of the trustee.[3] Over Navistar's objection, the bankruptcy court authorized the agreement and was affirmed by the district court on appeal. In its analysis, the district court carefully noted that while individual creditors cannot pursue avoidance actions solely on their own behalf, trustees could nevertheless "deputize" creditors to litigate preference actions on behalf of the trustee "as long as the fruits of the action belong to the estate, and the trustee retains control over the action." *Id.* at 34. The *Vogel* court was careful to note that case-by-case circumstances may justify occasional departures from the general rule that trustees normally exercise their powers exclusively, reasoning:

As the Third Circuit has explained, "[t]he rule that individual creditors cannot act in lieu of the trustee is often

breached when sufficient reason exists to permit the breach." *In re McKeesport Steel Castings Co.,* 799 F.2d 91, 94 (3d Cir.1986) (discussing in the context of § 506(c)). The circumstances of this case seem to support such an action, and the bankruptcy court was well within its discretion in authorizing it. See *In the Matter of Boerne Hills Leasing Corp.,* 15 F.3d 57, 60 (5th Cir.1994) (party may only pursue avoidance claim under § 545(2) after seeking authorization from bankruptcy court to act on trustee's behalf); *In the Matter of Natchez Corp.,* 953 F.2d 184, 187 (5th Cir.1992) ("A creditor may [invoke the avoidance powers of § 549] on behalf of the trustee or debtor-in-possession if it has moved the bankruptcy court for authorization to do so and has shown appropriate circumstances which would permit such action.").

*Id.* at 32–33. Recognizing that the basic policy implications of the Bankruptcy Code emphasize maximization of recovery of estate assets and fairness to all creditors, the *Vogel* court found that the "authorization" at issue in the case before it was justified because it did not threaten to impair the Bankruptcy Code's primary policies of: 1) maximizing the value of the debtor's estate; and 2) preserving the equality of distribution of the estate among the debtor's creditors. *Id.* at 33. Under these circumstances, the district court approved the sale and was subsequently affirmed on appeal.[4]

---

**3.** Although Key Bank offered exactly the same amount as the settlement offer, the *Vogel* decision readily explains why the trustee chose to accept the offer rather than simply settle the appeal with Navistar: "For the Trustee and the estate, this arrangement holds nothing but upside potential. If Key Bank wins, the estate receives $45,000 plus the recovery on the appeal, less attorney's fees. If Key Bank loses, the estate still receives $45,000 from Key Bank, and is liable for no attorney's fees. The

benefits of the arrangement accrue almost entirely to the estate, whereas the costs and risks of litigation are borne by Key Bank." *Vogel,* 210 B.R. at 33.

**4.** In affirming the district court's decision, however, the Second Circuit explicitly avoided addressing the merits of this portion of the opinion by affirming the decision on other grounds and remarking: "Because we agree with Judge Scullin that Vogel Van's payment

**50**

■ The Second Circuit most recently addressed a similar issue in the context of a chapter 11 case in its decision in *In re Commodore International Ltd.*, 262 F.3d 96 (2d Cir.2001). In rejecting the long-standing limitation on creditors' committees' ability to obtain standing to bring suit on behalf of a debtor only when the trustee or debtor unjustifiably failed to bring suit, the Second Circuit held that:

A creditors' committee may acquire standing to pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is "necessary and beneficial" to the fair and efficient resolution of the bankruptcy proceedings. [citation omitted] This approach permits a reasoned and practicable division of labor between the creditors committee and the debtor in possession or trustee, while also providing the bankruptcy courts with significant authority both to manage the litigation and to check any potential for abuse by the parties. [citation omitted].

262 F.3d at 99. This "necessary and beneficial" standard is a relatively expansive approach to the assignment of the duties of the debtor or the trustee in the chapter 11 context, and is consistent with the assignment of the trustee's duties in the chapter 7 context addressed by the *Vogel* court. Read together, these decisions indicate that the trustee's duties may be assigned to creditors provided that the relevant underlying bankruptcy policies are satisfied.

■ In considering whether the proposed assignment is in the best interests of the estate, it is necessary to consider, as the *Vogel* court did, whether such an assignment would serve to maximize the value of the debtor's estate and whether the assignment might prejudice the equality of distribution among the debtor's creditors. In purely financial terms, Chubb's offer to pay $175,000 to the estate in exchange for the right to pursue the claims is the proposal that best maximizes value for the estate. At the hearing, the trustee recommended to the Court that it approve this higher offer. Although the trustee has indicated his willingness to establish bidding procedures that would ensure the maximization of value prior to the acceptance of a final offer, the Court drew an inference from discussions on the record at the last hearing that the United States trustee, Chubb and the nondebtor spouse's special counsel concurred that there would be no point to holding bidding procedures due to Chubb's domination of ninety-nine percent of all outstanding claims. However, Chubb's current proposed offer, even excluding any potential for future recovery, will realize a greater amount for the estate than the original proposed settlement offer of $150,000. And unlike the situation in *Vogel*, the creditor in this case has not only matched the proposed settlement offer, but has in fact surpassed it.

In considering fairness to all creditors, it is important to note that the Chubb entities represent ninety-nine percent of all

was made in the ordinary course of business, we do not reach appellees' assertion on cross-appeal that Key Bank, a creditor of Vogel Van, was not entitled under 11 U.S.C. § 547(b) to pursue, on behalf of the bankruptcy estate, the appeal from the bankruptcy court's judgment." 142 F.3d at 572. The Second Circuit's reluctance to endorse the

district court's approval of the sale of the trustee's right to litigate the appeal may be indicative of a reluctance to endorse a routine practice of assigning the trustee's powers to creditors, but nevertheless did not foreclose this approach if justified by the circumstances of the case.

outstanding claims. While this factor does not by itself carry the day for Chubb, it does obviate the *Vogel* court's concern about the possibility that one creditor might recover more than its fair share of assets in any subsequent action. *Vogel,* 210 B.R. at 33. Furthermore, any remaining concern about the potential for inequitable distribution in the proposed arrangement may be dispelled by restricting the assignment such that Chubb is limited to pursuing claims on behalf of the estate, rather than allowing Chubb to pursue claims only on behalf of itself. *See, e.g., In re Parmetex,* 199 F.3d 1029, 1031 (9th Cir.1999) (citing *Vogel* in support of holding that creditors may maintain standing to bring suit on behalf of the trustee). While the *Vogel* decision does not support an outright sale or assignment of the trustee's powers to a creditor to enable the creditor to pursue claims on its own behalf, a creditor may certainly pursue such claims on behalf of the estate, and Chubb has indicated a clear willingness to do so in its Second Reply:

> [I]f the Court finds that for Chubb to pursue the Claims using the Trustee's avoidance powers any recovery must be for the benefit of the estate, Chubb is willing to pursue the Claims on behalf of the estate, and will accept that as a condition of any assignment.

Second Reply at 4, ¶ 9. By limiting the assignment in this manner, the Court may ensure that the trustee will continue to fulfill his duty to maximize the value of the estate and oversee the equal distribution to all creditors of any further recovery. Finally, Chubb has offered to seek recovery on behalf of Aljo as well, which allows the trustee to propose an equitable distribution of recovered assets and to participate in the collection and distribution of any recovered funds. Reply at 6, ¶ 11.

Bankruptcy courts are properly hesitant to authorize the sale or assignment of a trustee's avoidance powers or causes of action to a single creditor. Assignments of the trustee's unique statutory powers, if not carefully scrutinized and narrowly circumscribed, may too easily result in the improper delegation and dilution of the trustee's primary duty "to marshal the debtor's property for the benefit of the estate, and ... to sue parties for recovery of all property available under state law," *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 697 (2d Cir. 1989) *quoting Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339, 1342 (7th Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). Furthermore, the sale of the trustee's powers to a single creditor, no matter how impartially executed, may nevertheless contribute to the appearance of unfairness and a lack of neutrality. However, the appearance of impropriety is minimized in this case, in which Chubb holds over ninety-nine percent of the claims, and the immediate benefit to the estate of $25,000 in excess of the original settlement offer clearly maximizes value for the estate. Finally, the trustee's authority to pursue these claims may be properly assigned to Chubb provided that such authority is limited to the pursuit of claims on behalf of the estate and that any subsequent recovery is equitably distributed to Greenberg's creditors under the trustee's supervision.

## Conclusion

For these reasons, Chubb's objection to the trustee's Stipulation and Settlement is GRANTED. The proposed Stipulation and Settlement is DENIED. It is now

ORDERED that the trustee settle an order setting forth the proposed sale and assignment of his right to pursue the outstanding avoidance actions on behalf of the

52

estate consistent with this Memorandum and Order and the trustee's independent duties to maximize value for the estate and ensure equitable distribution of any subsequent recovery to the Greenberg creditors;

IT IS FURTHER ORDERED that any payment to the trustee by Chubb for this assignment shall be made within thirty days of the entry of the trustee's order.

If an arrangement for the sale and assignment of the trustee's right to pursue the avoidance actions is successfully executed, the trustee and Chubb are directed to reach a mutual agreement concerning the forum in which this adversary proceeding should be tried, considering whether this adversary proceeding should be withdrawn to the district court, coupled with a request that the proceeding be reassigned to the district judge who presides over the litigation involving the other defendants in the RICO action. Any further such orders in conjunction with this decision should be settled upon notice to all defendants.