**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

In re: MARK LEE RINDLESBACH,

    Debtor.

--------------------

MARK LEE RINDLESBACH,

    Appellant,

v.

PHILIP G. JONES, Trustee; J. VINCENT
CAMERON, United States Trustee; RUTH
B. HARDY REVOCABLE TRUST;
DELCON CORPORATION PROFIT
SHARING PLAN, fbo A. Wesley Hardy;
FINESSE PSP; MJS REAL PROPERTIES;
UINTAH INVESTMENTS; DAVID D.
SMITH; STEVEN CONDIE; DAVID L.
JOHNSON; BERRETT PSP; VW
PROFESSIONAL HOMES PSP; TY
THOMAS; DRP MANAGEMENT PSP;
LEXON SURETY GROUP; BOND
SAFEGUARD INSURANCE COMPANY;
LEXON INSURANCE COMPANY,

    Appellees.

No. 15-4088
(D.C. No. 2:14-CV-00577-CW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously
that oral argument would not materially assist in the determination of this appeal. *See*
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted
without oral argument. This order and judgment is not binding precedent, except under
the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,

_____

Before **HARTZ**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

In the Chapter 7 bankruptcy proceedings for Mark Lee Rindlesbach (Debtor), the United States Bankruptcy Court for the District of Utah approved a settlement agreement between a claimant to the bankruptcy estate (the Hardy Lenders) and the Trustee. Debtor appealed that order to the district court, which dismissed the appeal because the controversy was equitably moot and Debtor lacked standing. We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291, and affirm. Because we hold that Debtor lacks standing to challenge the settlement agreement, we do not reach the mootness issue.

## I.     BACKGROUND

In 2007 the Hardy Lenders loaned $3.3 million to Eagle Mountain Lots, LLC to acquire land in Utah. Debtor, acting as trustee for the Rindlesbach Construction Inc. Profit Sharing Plan (the Plan), signed a guaranty for the loan. The borrower defaulted and the Hardy Lenders filed suit in state court against the guarantors and against Debtor in his personal capacity (the Guaranty Action). The state court granted summary judgment to Debtor on the individual claim against him, ruling that he was not personally liable; the Hardy Lenders appealed. The Hardy Lenders prevailed at a jury trial, however, on their claims against the Plan, and the court entered judgment for $6,367,203.64.

_____

however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The Hardy Lenders also brought two additional state-court actions against Debtor alleging that after the jury verdict he had fraudulently transferred assets out of the Plan and personally retained a portion of the sale proceeds (Fraudulent Transfer Actions). In one action the state court ordered Debtor to deposit $2.2 million with the court pending resolution of the claims. Debtor failed to deposit the entire amount, so the court held him in contempt and ordered him to deposit the full amount and to pay the Hardy Lenders' expenses for the contempt proceedings. Debtor then filed for bankruptcy, automatically staying the pending actions.

In bankruptcy court the Hardy Lenders asserted three claims against Debtor: they sought roughly $7 million on the guarantee (on the theory that Debtor is personally liable), about $3.6 million on the fraudulent-transfer claims, and $5 million in punitive damages. The Hardy Lenders ultimately reached a settlement with the Trustee, which allowed their claim in the amount of $4 million ($2.6 million on the guaranty and $1.4 million for the fraudulent transfers), subordinated to all other unsecured claims against the bankruptcy estate. The bankruptcy court approved the settlement over Debtor's objection and granted Debtor's discharge. The Trustee made a final distribution of the estate's assets on the allowed claims.

On appeal Debtor challenges two provisions of the settlement agreement. Because he lacks standing to challenge either, we dismiss the appeal.

## II.    STANDING

Only a "person aggrieved" by a bankruptcy court order may seek appellate review of that order. *In re C.W. Mining Co.*, 636 F.3d 1257, 1260 (10th Cir. 2011). "To qualify

3

as a 'person aggrieved,' a person's rights or interests must be directly and adversely affected pecuniarily by the decree or order of the bankruptcy court." *Id.* (internal quotation marks omitted). Thus, "unless the estate is solvent and excess will eventually go to the debtor, or unless the matter involves rights unique to the debtor, the debtor is not a party aggrieved by orders affecting the administration of the bankruptcy estate." *Id.* (brackets and internal quotation marks omitted). Rights "unique to the debtor" include "discharge of debts or exemption of property from the estate." *In re Weston*, 18 F.3d 860, 864 n.3 (10th Cir. 1994); *see also In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1500 (10th Cir. 1994) ("Litigants are 'persons aggrieved' if the order appealed from diminishes their property, increases their burdens, or impairs their rights." (brackets and internal quotation marks omitted)).

**A. Judgment Provision**

One provision of the settlement (the Judgment Provision) modifies the automatic stay to allow, among other things, the Hardy Lenders to seek recovery of assets fraudulently transferred by Debtor to his wife or other transferees. It also authorizes the Trustee (standing in the shoes of Debtor) to stipulate in the Utah Court of Appeals to reversal of summary judgment in the Guaranty Action and, upon remand of the action to the state trial court, to stipulate to a judgment against Debtor for $2.6 million.

Typically, postdischarge judgments against the debtor are barred. *See* 11 U.S.C. § 524(a)(2) ("A discharge . . . operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor . . . ."). "The intent of this post-discharge injunction is to protect

4

debtors . . . in their financial 'fresh start' following discharge." *In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991). But 11 U.S.C. § 524(e) states that ordinarily "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt"; and it is "well established" that this provision permits a creditor such as the Hardy Lenders "to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when . . . establishment of that liability is a prerequisite to recovery from another entity," *Walker*, 927 F.2d at 1142.

That is the circumstance here. No one will seek to enforce the judgment against Debtor; that would be a clear violation of § 524(a)(2). In the "Relief Sought" portion of their appellate brief in the Guaranty Action, the Hardy Lenders stated that they "anticipate that the only further proceeding that will be needed in the trial court is the dismissal of their claim against [Debtor] without prejudice, the matter having been resolved by the Bankruptcy Court's Settlement Order." Aplt. App. at 313. They sought reversal of the ruling that Debtor is not personally liable for the Plan's guaranty only because that ruling might bar their recovery against third parties. To recover on a fraudulent-transfer claim, one must show that one's claim against the transferor arose before the transfer. *See* Utah Code. Ann. § 25-6-6(1). The Hardy Lenders were concerned that those who received assets from Debtor would argue that the dismissal of the Guaranty Action against Debtor personally had proved that the Hardy Lenders had no pretransfer claim against him. Reversal of the summary-judgment ruling removed that potential problem. Insofar as the Judgment Provision does no more than remove an

impediment to the Hardy Lenders' recovery against third parties, it does not affect Debtor's rights or interests and therefore does not confer standing on him.

Debtor argues that the Judgment Provision impairs his rights because he may have to incur litigation expenses to defend against attempts to enforce the judgment. But enforcement of the judgment is clearly unlawful under 11 U.S.C. § 524(a) and unlikely to be sought; the remote possibility of future litigation does not constitute sufficient impairment to grant standing to Debtor. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–64 (1992) (possibility of future trips to foreign lands where endangered species live is too "conjectural or hypothetical" to present "actual or imminent" injury required for standing to challenge regulation limiting oversight under the Endangered Species Act to actions taken in the United States (internal quotation marks omitted)); *cf. Walker*, 927 F.2d at 1143 (possibility of litigation to establish debtor's liability, when debtor's discharge precludes judgment against debtor, "does not constitute sufficient prejudice to [debtor's] fresh start to preclude granting [creditor] relief from section 524's post-discharge injunction [to establish debtor's liability as prerequisite to recovery from another person]"). Debtor also argues that the judgment will damage his postbankruptcy credit prospects, but the notion that an unenforceable judgment, even in the unlikely event that it is entered, will have any incremental detriment to Debtor's credit beyond that stemming from his Chapter 7 bankruptcy is wholly speculative; it does not "directly and adversely affect[]" Debtor and thus does not confer standing. *C.W. Mining*, 636 F.3d at 1260; *see Lujan*, 504 U.S. at 563–64.

6

**B. Assignment Provision**

Another provision of the settlement agreement (the Assignment Provision) calls for the Trustee to sell all the estate assets, including all claims and causes of action available to the Trustee or the estate, to the Hardy Lenders. This provision allows the Hardy Lenders to pursue avoidance actions against third parties.

Debtor contends that he is aggrieved by the Assignment Provision because the Hardy Lenders, in their pursuit of their fraudulent-transfer claims, will likely seek discovery and testimony from him. But nothing in the bankruptcy-court order imposes any obligation on Debtor beyond that of every person to participate in discovery in civil litigation between other persons. *See In re Am. Ready Mix*, 14 F.3d at 1500 ("Litigants are 'persons aggrieved' if the order appealed from diminishes their property, increases their burdens, or impairs their rights." (brackets and internal quotation marks omitted)); *cf. In re Paul*, 534 F.3d 1303, 1307 (10th Cir. 2008) ("[R]equiring a debtor to bear such collateral burdens of litigation as those relating to discovery (as opposed to the actual defense of the action and potential liability for the judgment), does not run afoul of § 524(a)(2).").

Debtor further contends that his standing is irrelevant to his challenge to the Assignment Provision because the challenge "raise[s] questions of subject-matter jurisdiction which the Court must address in any event." Aplt. Br. at 13. He appears to argue that the bankruptcy court lacked subject-matter jurisdiction to approve what Debtor characterizes as "essentially the sale of the Trustee's office [to the Hardy Lenders]," Aplt. Br. at 27, because the Bankruptcy Code mandates that a trustee be disinterested and the

7

Hardy Lenders are not. But this argument goes to the merits, not jurisdiction. Although "[b]ankruptcy courts are properly hesitant to authorize the sale or assignment of a trustee's avoidance powers or causes of action to a single creditor," *In re Metro. Elec. Mfg. Co.*, 295 B.R. 7, 12 (Bankr. E.D.N.Y. 2003) (internal quotation marks omitted), the bankruptcy court undoubtedly has subject-matter jurisdiction to approve assignments of any asset of the bankruptcy estate, s*ee id.* (noting propriety of assigning avoidance powers in certain circumstances); 28 U.S.C. § 157(b)(2)(A) (bankruptcy courts have jurisdiction over "matters concerning the administration of the estate").

## III. CONCLUSION

We DISMISS Debtor's appeal for lack of standing and DENY the Trustee's motion to dismiss the appeal as moot.

Entered for the Court

Harris L Hartz
Circuit Judge