**PUBLISH**

**February 14, 2011**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In the Matter of:  C.W. MINING
COMPANY, a/k/a Co-op Mining
Company,

      Debtor.

------------------------------

C.W. MINING COMPANY,

      Appellant/Cross-
      Appellee,

v.

AQUILA, INC.; OWELL
PRECAST, LLC,

      Appellees,

KENNETH A. RUSHTON,
Trustee,

      Intervenor –
      Appellee/Cross-
      Appellant.

Nos. 10-4023 & 10-4033

---

**Appeals from the Opinion of the United States**
**Bankruptcy Appellate Panel of the Tenth Circuit**
**(BAP No. UT-08-102)**

---

Russell S. Walker, Woodbury & Kesler, P.C., Salt Lake City, Utah (David R. Williams and Anthony M. Grover with him on the briefs) for Appellant/Cross-Appellee

Brent D. Wride, Ray Quinney & Nebeker P.C., Salt Lake City, Utah (Steven W. Call and Eleaine A. Monson with him on the briefs) for Appellees/Cross-Appellants Aquila, Inc. and Owell Precast, LLC (Tyler S. Foutz, Olsen Skoubye & Nielson, LLC, with them on the briefs)

Michael N. Zundel, Prince, Yeates & Geldzahler, Salt Lake City, Utah (Aaron B. Millar with him on the briefs) for Intervenor-Appellee/Cross-Appellant Kenneth A. Rushton, Trustee

Before **LUCERO**, **HARTZ**, and **HOLMES**, Circuit Judges.

**LUCERO**, Circuit Judge.

C.W. Mining Corporation ("C.W.") is the debtor in this involuntary Chapter 7 bankruptcy proceeding. On summary judgment, the bankruptcy court determined that the creditors who filed the involuntary petition were "qualifying creditors" as required to trigger involuntary bankruptcy. C.W.'s former managers ("the Managers"),[1] purporting to act on C.W.'s behalf, appealed the grant of summary judgment to the Tenth Circuit Bankruptcy Appellate Panel ("BAP"), which affirmed.

A threshold question before the BAP was whether the Managers could bring C.W.'s appeal over the Chapter 7 trustee's objection. Reasoning that "[a] putative debtor

---

[1] A major question presented in this case is whether the Managers were authorized to bring C.W.'s appeal. We therefore refer to the appellees as "the Managers" rather than "C.W." throughout this opinion.

- 2 -

must have standing to bring a bankruptcy court's involuntary order for relief before an appellate court," the BAP heard the appeal. But this case is about the Managers' authority, not about C.W.'s standing. C.W. had standing to appeal. However, the Chapter 7 trustee was the only person authorized to bring the appeal. The Managers were divested of their authority to appeal by the appointment of the Chapter 7 trustee, which they did not challenge. Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we therefore reverse and remand with the instruction to dismiss.

# I

C.W. operated a coal mine in Emery County, Utah. On January 8, 2008, Aquila, Inc. ("Aquila"), Owell Precast, LLC ("Owell") and House of Pumps, Inc.[2] (collectively, "the Creditors") filed an involuntary Chapter 11 bankruptcy petition against C.W.[3] Aquila filed a motion for partial summary judgment on July 15, 2008, seeking a ruling that Aquila and Owell were qualifying petitioning creditors.[4] C.W. opposed the motion. On September 17, 2008, the bankruptcy court granted Aquila's motion and shortly thereafter ordered involuntary Chapter 11 relief against C.W. On September 29, 2008,

---

[2] House of Pumps is not a party on appeal.

[3] At the time this petition was filed, the Bankruptcy Code allowed involuntary petitions under Chapter 7 or Chapter 11, provided: (1) there are at least three creditors; (2) all of whose claims are not "contingent as to liability or subject to a bona fide dispute"; and (3) whose claims in total meet a statutory minimum amount, which in 2008 was $13,475. See 11 U.S.C. § 303(b)(1) (2008) (superseded); 11 U.S.C. § 104 (amount under § 303 regularly adjusted by the Judicial Conference of the United States).

[4] House of Pumps' qualifying creditor status was unchallenged.

C.W. filed a motion to reconsider the summary judgment ruling. But before the bankruptcy court ruled on that motion, Aquila moved to appoint a Chapter 11 trustee or convert the case to Chapter 7. At the hearing on the motion, C.W.'s attorney stated that the only Chapter 11 plan that it could propose would be a liquidating plan, and C.W.'s president testified that he wished to convert to Chapter 7 and that "C.W. Mining has no assets. It has no other operating cash, or any way to operate anything at all." The bankruptcy court granted Aquila's motion on November 13, 2008, and appointed Kenneth Rushton ("the Trustee") Chapter 7 interim trustee on November 19, 2008. On November 26, 2008, the bankruptcy court denied the pending motion to reconsider, and on December 8, 2008, Russell Walker, C.W.'s former counsel, purporting to act on behalf of the corporation, appealed to the BAP.

On appeal to the BAP the Trustee filed a motion to dismiss on two grounds: (1) C.W., as a hopelessly insolvent corporation, lacked standing to appeal after the Trustee was appointed; and (2) Walker was not authorized to file C.W.'s appeal. The BAP denied the Trustee's motion to dismiss but affirmed the grant of summary judgment on the merits, holding that the Creditors were bona fide creditors as a matter of law. In this appeal, the Managers argue (on C.W.'s behalf) that Owell was not a qualifying creditor. The Trustee cross-appeals, repeating the standing arguments presented in his motion to dismiss before the BAP.

## II

We review the BAP's grant of summary judgment de novo, applying the same

- 4 -

legal standard used by the BAP.  In re Holytex Carpet Mills, Inc., 73 F.3d 1516, 1518 (10th Cir. 1996).  Summary judgment is proper only "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "We examine the factual record and reasonable inferences therefrom in the light most favorable to [the Managers], who opposed summary judgment."  Thomas v. Int'l Bus. Machs., 48 F.3d 478, 484 (10th Cir. 1995).

This case turns on a simple question—following appointment of a Chapter 7 trustee in a corporate debtor's bankruptcy, may former management appeal an adverse bankruptcy court ruling on the debtor's behalf?  Supreme Court precedent and bankruptcy law compel us to conclude that such an appeal is forbidden.

**A**

The 1978 Bankruptcy Code is silent regarding the standard for standing to appeal.  Holmes v. Silver Wings Aviation, Inc., 881 F.2d 939, 940 (10th Cir. 1989).  But this circuit has adopted the rule, derived from the Bankruptcy Act of 1898, that appellate review of a bankruptcy court order is limited to "persons aggrieved" by that order.  Id. To qualify as a "person aggrieved," a person's rights or interests must be "directly and adversely affected pecuniarily by the decree or order of the bankruptcy court."  Id. (quotation omitted).  Accordingly, "[u]nless the estate is solvent and excess will eventually go to the debtor, or unless the matter involves rights unique to the debtor, the debtor is not a party aggrieved by orders affecting the administration of the bankruptcy estate."  In re Weston, 18 F.3d 860, 863-64 (10th Cir. 1994) (footnote omitted).  "[A]

hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate, since such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." In re El San Juan Hotel, 809 F.2d 151, 154-55 (1st Cir. 1987).

C.W. may well have standing as a "person aggrieved."[5] The Trustee argues that C.W. is hopelessly insolvent. That appears to be true—C.W.'s liabilities exceed its assets by almost $50 million and it has ceased mining operations. But even if C.W. seems "hopelessly insolvent," the company could still be a "person aggrieved." The rule articulated in El San Juan Hotel precludes a hopelessly insolvent debtor from appealing orders affecting the size of the estate. 809 F.2d at 154-55. This rule makes sense because

---

[5] We may not assume that C.W. has Article III standing in order to reach the merits of the Managers' case. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998) (federal courts must address jurisdictional questions, such as Article III standing, prior to reaching the merits). But we are satisfied that the "irreducible constitutional minimum" of Article III standing exists in this case. See id. at 102. C.W. being forced into bankruptcy certainly injured the company, that injury can be traced to the challenged conduct, and a favorable decision (vacating the involuntary petition) would redress that injury. See Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 663-64 (1993) (outlining the three conjunctive factors required to show Article III standing).

But standing "is more stringent in bankruptcy appeals than the case or controversy standing requirement of Article III." In re Alpex Computer Corp., 71 F.3d 353, 357 n.6 (10th Cir. 1995) (quotations omitted). The "person aggrieved" standing rule is a prudential limitation, not an Article III limitation. In re Combustion Eng'g, Inc., 391 F.3d 190, 214 n.20 (3d Cir. 2004). Accordingly, we may assume, without deciding, that C.W. is a "person aggrieved." See Kennedy v. Allera, 612 F.3d 261, 270 n.3 (4th Cir. 2010) ("While a court may not, of course, simply assume the existence of Article III standing, prudential standing questions may be avoided in order to decide a case on the merits.") (citation omitted)).

such a debtor would receive nothing, in the end, regardless of the estate's size.  See id.;

see also Matter of Andreuccetti, 975 F.2d 413, 417 (7th Cir. 1992).  However, the

Managers are not appealing an order regarding the size of the bankruptcy estate; they

seek to challenge the legitimacy of its creation.  Although C.W. is insolvent, the order

putting it into involuntary bankruptcy certainly appears to have affected its pecuniary

interests directly and adversely as required by Holmes, 881 F.2d at 940.

**B**

Consequently, the determinative question in this case is not whether C.W. has

standing as a "person aggrieved" to appeal, but whether the Managers have authority to

appeal on C.W.'s behalf.[6]  C.W., a corporation, cannot commit any act on its own.  It can

act only through its authorized agents.  Keys Youth Servs., Inc. v. City of Olathe, 248

F.3d 1267, 1271 n.3 (10th Cir. 2001).  The Managers claim they have the authority to

bring C.W.'s appeal.  However, the Trustee counters that only he may bring the appeal,

because the Managers were "completely ousted" when C.W.'s bankruptcy was converted

---

[6] Some courts have framed somewhat similar issues as questions of standing, under the rule that a person suing "must be able to allege an injury that affects his own legal rights" rather than those of a third party.  See, e.g., J.F. Shea Co., Inc. v. City of Chicago, 992 F.2d 745, 749-50 (7th Cir. 1993) (employees may not sue on behalf of a corporation); Am. Towers, Inc. v. Town of Falmouth, 217 F. Supp. 154, 157 (D. Me. 2002) (injury to subsidiary corporation did not give parent corporation power to sue on subsidiary's behalf).  However, because the Managers' authority is defined by bankruptcy law, in this case, the question of who has the legal capacity to bring C.W.'s appeal is best treated as a substantive question of law. Cf. Log Furniture, Inc. v. Call, 180 F. App'x 785, 788 (10th Cir. 2006) (unpublished) (addressing the "legal capacity" of former management as a substantive issue).

to Chapter 7 and a trustee was appointed.

**1**

Not all bankruptcies have trustees. In general, Chapter 11 bankruptcies do not. See 7 Collier on Bankruptcy ¶ 1104.02[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) (normally a Chapter 11 debtor remains in possession of its assets and continues to operate its business, although the court may appoint a trustee in limited cases, such as where fraud or mismanagement are alleged). By comparison, Chapter 7 bankruptcies always have a trustee. An interim trustee is appointed "promptly" after a Chapter 7 order for relief is granted, 11 U.S.C. § 701, and eventually, a permanent trustee (who may be the same as the interim trustee), is installed for the duration of the bankruptcy, § 702.

Chapter 7 trustees have extensive powers and responsibilities relating to the liquidation of the bankruptcy estate. Trustees must: collect and liquidate all of the estate's property; close the estate as efficiently as possible; account for all property received; investigate the debtor's financial affairs; examine claims against the estate and reject those that are not meritorious; and may (and sometimes must) bring legal action on behalf of the estate. See §§ 323(b), 704(a); see also 6 Collier on Bankruptcy, at ¶ 704.03.

The Supreme Court confirmed the breadth of this authority in Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343 (1985). In Weintraub, a Chapter 7 corporate debtor was being investigated for violating commodities trading laws. Id. at 345-46. Government officers subpoenaed the debtor's former general counsel, who

refused to answer the government's questions based on an asserted attorney-client privilege.  Id. at 346.  Consequently, the government asked the Chapter 7 trustee to waive the privilege, and he did.  Id.

The Court held that waiver was proper.  It explained that, in solvent corporations, the power to waive the corporation's attorney-client privilege is normally exercised by its managers, who must do so consistent with their fiduciary duty toward the corporation. Id. at 348-49.  However, only active managers may exercise the privilege; former managers no longer have any role.  See id. at 349.  And the Court held that general principle controlled for a bankrupt corporation:  "[b]ecause the attorney-client privilege is controlled, outside of bankruptcy, by a corporation's management, the actor [within the bankruptcy context] whose duties most closely resemble those of management should control the privilege in bankruptcy."  Id. at 351-52.

Weintraub held that the trustee's role is closest to that of management.  Once a corporation is in bankruptcy, "[t]he powers and duties of a bankruptcy trustee are extensive," with the Bankruptcy Code giving the trustee "wide-ranging management authority over the debtor."  Id. at 352.

> In contrast, the powers of the debtor's directors are severely limited.  Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors.  Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are "completely ousted."

Id. at 352-53 (citations omitted).  Accordingly, the debtor's directors could not "exercise the traditional management function of controlling the corporation's attorney-client

- 9 -

privilege," and the trustee could waive the privilege over the directors' objections. Id. at 353, 358.

The Managers provide no basis for distinguishing between a bankrupt corporation's attorney-client privilege, which Weintraub held is controlled by the trustee, and the corporation's right to appeal adverse bankruptcy court decisions. To the contrary, the Bankruptcy Code vests the right to litigate on behalf of the estate in the trustee, see 11 U.S.C. § 323, and includes an estate's legal claims as part of the estate's property, see § 541. The rule that the Managers urge—that former management controls C.W.'s appeal right in this case—necessarily would result in the trustee controlling some, but not all, of the debtor's assets. Such a result cannot be squared with Weintraub's rule that corporate officers are "completely ousted" once a trustee has been appointed. See 771 U.S. at 353.

The rule that "only the bankruptcy trustee may appeal an order from a bankruptcy court" was created "as a means to control, in an orderly manner, proceedings that often involve numerous creditors who are dissatisfied with any compromise that jeopardizes the full payment of their outstanding claims against the bankrupt." In re Westwood Cmty. Two Ass'n, Inc., 293 F.3d 1332, 1334 (11th Cir. 2002); cf. El San Juan Hotel, 809 F.2d at 154 (explaining the general rationale for bankruptcy appellate standing rules). As this court has persuasively explained:

> [T]he [Bankruptcy] Code makes no provision within the structure of
> Chapter 7 for "former management" to appear in the proceeding and
> attempt to control the property of the estate or assert a separate interest on

> behalf of the Debtor.  The whole notion that the contrary is true is antithetical to the basic concept of a corporate liquidating bankruptcy under Chapter 7 of the Code. . . . <u>The only person with standing or legal capacity to represent [the Debtor] in any litigation, including these appeals, is its Trustee</u>.

<u>Log Furniture, Inc.</u>, 180 F. App'x  at 787-88 (emphasis added).  Other individuals might have standing to appeal under the "person aggrieved rule," but those individuals may not usurp the <u>corporation</u>'s right to appeal, which may be exercised by the trustee alone.

**2**

The BAP's contrary conclusion is grounded on the threshold error (which the Managers repeat in this appeal) of confusing <u>C.W.'s</u> right to appeal with <u>C.W.'s former management's</u> right to bring C.W.'s appeal.  In its opinion, the BAP did not recognize that this case is about the Managers' authority, not C.W.'s standing.

In deciding to exercise jurisdiction, the BAP's primary concern was fairness.  It correctly noted that the Bankruptcy Code gives a putative involuntary debtor the right to challenge the involuntary petition.  <u>See</u> 11 U.S.C. § 303(d).  Accordingly, the BAP accepted the Managers' argument that "if involuntary debtors like C.W. [] are denied standing to appeal, their right to answer [under § 303(d)] is rendered a nullity."

Yet the question is not <u>whether</u> C.W. can appeal the § 303(b) determination, but <u>who</u> can bring C.W.'s appeal.  It would certainly be unfair and against the spirit of the Bankruptcy Code to prevent a debtor from appealing a § 303(b) determination.  In the present action, the Trustee's motion to dismiss never contested C.W.'s right to appeal.  Rather, it argued that the Trustee alone could decide to pursue such an appeal.

- 11 -

After C.W. entered into Chapter 7 bankruptcy and a trustee was appointed, C.W.'s former management's only role was "to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors." Weintraub, 471 U.S. at 352. C.W.'s directors were otherwise "completely ousted." Id. at 353. The Bankruptcy Code makes no provision for former management to appear in a Chapter 7 proceeding to assert a separate interest on behalf of the Debtor.[7] See Log Furniture, Inc., 180 F. App'x at 787. Authority to make legal decisions, like all other business decisions, passed to the Trustee alone.

In Weintraub, the appointment of a trustee did not destroy the attorney-client privilege, but only changed who could assert it. Similarly in this case, the appointment of the Trustee did not, as the BAP held, destroy C.W.'s right to appeal. Such a right remained intact. All that changed was who could bring that appeal. Although the BAP discussed how "CW[] asserts" that its right to appeal was on the line, C.W., in fact, asserted no such thing—that argument was made by C.W.'s former management, purporting to act on C.W.'s behalf. C.W., through its only legally authorized representative, the Trustee, correctly argued the contrary: the decision to appeal must be made by the Trustee after identifying the best interests of the estate.

**3**

The Managers' equity argument is slightly different from that advanced in the

---

[7] At oral argument, the Managers' counsel stated: "We do not represent the [bankruptcy] estate. We represent a separate interest . . . ."

BAP's order, but rests on the same misguided conflation of C.W. with C.W.'s former management.

In contrast to the BAP's right-without-a-remedy concern, the Managers advance an equitable argument, making a distinction between involuntary and voluntary bankruptcy proceedings. They explain that, as an involuntary debtor, C.W. was "forced into the bankruptcy." Consequently, they contend "[e]quity demands that an involuntary debtor have standing to appeal both the involuntary petition [and] bankruptcy court orders for relief where the debtor has been placed into bankruptcy against its will." At oral argument, the Managers went further, calling the involuntary petition a "harsh remedy that will force a company into this nightmare," and requested an equitable right to appeal on that basis.[8] Perhaps the Managers' equity argument seems compelling, at least facially. C.W. was forced into bankruptcy involuntarily. It contested that involuntary petition and lost. And now the Trustee is seeking to prevent C.W. from appealing.

But their argument is flawed because it is unresponsive to the Trustee's contention. No one took away C.W.'s right to appeal. As discussed above, C.W.—the

---

[8] The Managers' point us to a Tenth Circuit case, <u>Bartmann v. Maverick Tube Corp.</u>, 853 F.2d 1540 (10th Cir. 1988). It is not on point. In <u>Bartmann</u>, the bankruptcy court dismissed an involuntary petition, holding one of the creditors did not qualify under § 303(b), and the creditors appealed to the district court. <u>Id.</u> at 1541-42. The district court reversed and ordered the bankruptcy court to grant the petition. <u>Id.</u> at 1542. We heard the debtor's appeal. <u>Id.</u> <u>Bartmann</u> is readily distinguishable because the debtor in that case appealed before a bankruptcy trustee had been appointed. <u>See id.</u> at 1541-42.

corporate entity—may in fact have standing to appeal as a "person aggrieved." But C.W.'s standing does not authorize the Managers to act on C.W.'s behalf. There is therefore nothing unfair, because we are not denying C.W. the right to appeal. In accordance with bankruptcy law and with Supreme Court precedent, see Weintraub, 471 U.S. at 352-53, we merely reaffirm that only the Trustee has the right to bring C.W.'s appeal.

Furthermore, and contrary to the Managers' argument, there is no "separate interest" for the Managers to represent. Corporations have only the interests the law grants them. As the Supreme Court explained long ago, "[a] corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being a mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence." Trs. of Dartmouth Coll. v. Woodward, 17 U.S. (4 Wheat.) 518, 636 (1819). And "a corporation remains unchanged and unaffected in its identity by changes in its members." Old Dominion Copper Mining & Smelting Co. v. Lewisohn, 210 U.S. 206, 216 (1908).

When a corporation enters Chapter 7 bankruptcy and a trustee is appointed, the corporation itself, as an intangible legal creation, remains unchanged. But it gets new management, in the form of a trustee, Weintraub, 471 U.S. at 353, and its legal purpose becomes vastly different. The Supreme Court "has long recognized that a chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period." Katchen v. Landy, 382 U.S. 323,

328 (1966) (quotation omitted).  The entire purpose of involuntary bankruptcy is to "protect the interests and desires of the creditors as a whole."  <u>Basin Elec. Power Co-op. v. Midwest Processing Co.</u>, 47 B.R. 903, 908 (D.N.D. 1984).  Accordingly, bankruptcy law drastically redefines and narrows the corporation's "interest"—the major purpose for its continued existence is maximizing the value of the estate for its creditors, not its shareholders.  Bankruptcy law abrogates other "interests" C.W. may have formerly had.

To the extent the Managers argue they are vindicating C.W.'s interests, they are wrong.  Just the opposite is true:  the Managers' attempts to confound the Trustee's administration of the estate <u>hinder</u> the only interest C.W. now legally has, which is liquidating the business in such a manner as to maximize the estate's value.

Seeking to distinguish <u>Weintraub</u>, the Managers contend that its "complete ouster" rule should not apply in involuntary bankruptcies.  But such a distinction finds no support in bankruptcy law.  Under the rule the Managers urge us to adopt, an involuntary corporate debtor's former managers would linger on the scene long after the Code and <u>Weintraub</u> require them to exit.  Instead of an orderly liquidation of the estate, every move by the Trustee, and every adverse court decision, could be contested and appealed.  As this case demonstrates, such actions delay the Chapter 7 liquidation and seriously erode the value of the estate.  We decline to create a rule that runs entirely counter to the very purpose of Chapter 7 bankruptcy.

**4**

Accordingly, we confirm that following the appointment of a trustee in a corporate

Chapter 7 bankruptcy, the corporation's former managers are not authorized to bring the corporation's appeal—even if that appeal contests the very initiation of the bankruptcy itself. There is no equitable exception to this rule, nor is there a distinction between voluntary and involuntary debtors. However, we do note three limits of our holding.

First, we do not hold that a bankrupt corporation's managers never have the authority to bring the corporation's appeal. Before a trustee is appointed, control of the corporation remains vested in its managers. Moreover, the Chapter 11 bankruptcy trustee, if there is one, has a much different role than in Chapter 7. Chapter 11 focuses on the debtor: its essence "is to provide a mechanism for the reorganization of a financially distressed business or individual in the hope that a profitable and productive member of its economic community can once again emerge." 1 Collier on Bankruptcy, at ¶ 1.07[3]. Therefore, in Chapter 11, a trustee takes up the fiduciary duties of the former managers and has an interest in reorganizing the bankruptcy estate for the shareholders as well as the creditors. Weintraub, 471 U.S. at 345. When a corporate bankruptcy is converted from Chapter 11 to Chapter 7, a sea change takes place. Chapter 7 shifts the focus to creditors, 1 Collier on Bankruptcy, at ¶ 1.07[1][a], and protects the creditors by appointing a trustee to control the estate.

And even after conversion to Chapter 7, a corporation's management is not without recourse. While they still control the corporation, managers can contest a conversion to Chapter 7. See 11 U.S.C. § 1112(b)(1). Accordingly, they can appeal a conversion order (at least until a trustee is appointed). See In re Rosson, 545 F.3d 764,

- 16 -

770 (9th Cir. 2008). But when corporate managers fail to appeal the conversion to Chapter 7, they cannot atone for their mistake by appealing other determinations over a trustee's objection. Given the Managers' failure to appeal the conversion in this case, their arguments regarding equity ring especially hollow.

Second, our rule does not apply to individuals in Chapter 7 bankruptcy. We do not hold that C.W. has no right to appeal the bankruptcy court's § 303(b) determination. Instead, our holding is premised on the fact that: (1) a corporation can only act through its agents; and (2) after a Chapter 7 trustee is appointed, the trustee is the only agent authorized to act for the corporation. C.W. still may have an appeal right, but the only natural person who can control the right is the trustee.

This rule does not follow for natural persons in Chapter 7 bankruptcy. An individual debtor can appeal over a trustee's objection if the debtor is a "person aggrieved." This is so because individual debtors have interests, outside the bankruptcy estate, which can be implicated by adverse bankruptcy court determinations. But whether a debtor is a "person aggrieved" is a separate inquiry (and one we could have reached had the Trustee, not the Managers, appealed to the BAP). Because no party authorized to make the argument claims that C.W. is a person aggrieved, we decline to consider that issue here.

Third, we do not hold that former managers cannot appeal a bankruptcy court order in their own right. If C.W.'s managers themselves have been injured pecuniarily, they can appeal as "persons aggrieved." <u>Cf.</u> <u>In re LTV Steel Co.</u>, 560 F.3d 449, 450,

- 17 -

455-56 (6th Cir. 2009). Such an appeal must be brought on their own behalf, not on behalf of C.W.

### III

Accordingly, we **REVERSE** and **REMAND** with the instruction to **DISMISS**.