FILED
United States Court of Appeals
Tenth Circuit

January 4, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re: EUROGAS, INC.,

    Debtor.

---------------------------------------------

THE SLOVAK REPUBLIC,

    Appellant,

v.

ELIZABETH R. LOVERIDGE, Chapter 7
Trustee, EUROGAS, INC., and TEXAS
EURO GAS CORP.,

    Appellees.

No. 17-4197
(BAP No. UT-16-033)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **EBEL**, and **MORITZ**, Circuit Judges.
_____

This appeal stems from the Chapter 7 bankruptcy of EuroGas, Inc.

("EuroGas I").  The Slovak Republic, an unsecured creditor who filed a claim in that

bankruptcy, appeals the decision of the Tenth Circuit Bankruptcy Appellate Panel

("BAP") dismissing its appeal for lack of prudential standing and, in the alternative,

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

ruling against it on the merits. On the merits, the BAP affirmed the bankruptcy court's approval of an agreement between the trustee and another entity disposing of some of the estate's assets. Specifically, the agreement required the trustee to abandon any interests the estate had in certain talc deposits located in the Slovak Republic in exchange for $250,000 and the withdrawal of a $113 million claim against the estate. The Slovak Republic challenges that agreement as an improper abandonment of assets under 11 U.S.C. § 554(a). Exercising jurisdiction under 28 U.S.C. § 158(d), we assume without deciding that the appellant-creditor has prudential standing and then we conclude that the bankruptcy court did not clearly err in finding that retention of the talc claims would have been burdensome to the estate under 11 U.S.C. § 554.

## I. BACKGROUND

### A. EuroGas I's Bankruptcy Proceedings

EuroGas I was formed as a Utah Corporation in 1985. The company was administratively dissolved in 2001 for failure to file an annual report and for failure to pay the annual fee required by Utah law. On November 15, 2005, EuroGas II, a successor entity with the same name and same officers as EuroGas I, was incorporated in the state of Utah.

This Chapter 7 bankruptcy was initiated on May 18, 2004 when judgment creditor W. Steve Smith filed an involuntary petition of bankruptcy against EuroGas I in the District of Utah bankruptcy court. Smith had obtained judgments against EuroGas I while acting as trustee for various other bankruptcy estates. Particularly

2

relevant here, Smith received a judgment against EuroGas I in the amount of $113,371,837.65 in June 2004 from the Southern District of Texas. This judgment was filed as Claim 1-1 in EuroGas I's bankruptcy. Texas Euro Gas ("TEG") acquired Claim 1–1 from Smith in September 2007. The trustee of EuroGas I's bankruptcy distributed approximately $700,000 to creditors, the majority of which went to TEG, due to the substantial size of Claim 1-1. The case closed on March 19, 2007.

In September 2015, upon motion from the U.S. Trustee, the bankruptcy court reopened EuroGas I's bankruptcy case to investigate the ownership of certain interests in talc deposits located in the Slovak Republic ("talc claims") that were undisclosed in EuroGas I's initial bankruptcy proceeding. It was alleged that the talc claims were property of the bankruptcy estate of EuroGas I being unlawfully held by EuroGas II. The U.S. Trustee appointed Elizabeth Loveridge ("Trustee") to serve as the trustee for the estate in the reopened bankruptcy proceeding.

Sometime between the close and reopening of EuroGas I's bankruptcy case, EuroGas II initiated an arbitration proceeding before the International Centre for Settlement of Investment Disputes in France, seeking resolution of the dispute regarding ownership of the talc claims. The Slovak Republic was also party to the arbitration. Although the arbitration has since been closed, it was ongoing at the time the bankruptcy court issued the order that underlies this appeal.[1]

_____

[1] Along the way, the Slovakian Supreme Court weighed in, determining that efforts to revoke certain of the Talc Mining Rights violated the laws of the Slovak Republic, but notwithstanding those rulings the Slovak Republic has refused to reinstate the revoked mineral rights.

3

## B. Abandonment of the Talc Claims

After EuroGas I's bankruptcy was reopened, the Trustee investigated the talc claims and communicated with the parties in interest and their representatives. After concluding that the bankrupt estate's ownership of the talc claims was uncertain and that the claims would be difficult and expensive to administer, the Trustee entered into an agreement with EuroGas II ("Agreement") to dispose of the claims. The major financial terms of the Agreement were as follows: EuroGas II agreed to remit $250,000 to the Trustee and TEG agreed to withdraw Proof of Claim 1-1 in exchange for the Trustee filing, and the bankruptcy court approving, a Notice of Abandonment of any remaining interest that the estate still had in the talc claims. After making this agreement with EuroGas II, the Trustee filed a Motion to Approve Agreement and a Notice of Proposed Abandonment with the bankruptcy court on August 18, 2016.

On August 19, 2016, the Slovak Republic purchased two claims worth $240,181 each from a creditor of EuroGas I and, as a result, became an unsecured creditor in the reopened bankruptcy case. Then, the Slovak Republic promptly filed an objection to the Trustee's motion and notice and an objection to Claim 1-1.

## C. The Bankruptcy Court's Opinion

The bankruptcy court held an evidentiary hearing on the Trustee's motion during which the Trustee, the Slovak Republic, EuroGas II, and TEG presented oral argument, called witnesses to testify, and submitted other evidence.

The Trustee testified that, after significant investigation, she was unable to determine whether the talc claims remained with the bankruptcy estate or were

4

abandoned when the case was closed in 2007. She also noted that, even if she could determine the estate's ownership over the talc claims, the talc claims could not be liquidated easily because they were the subject of the international arbitration involving EuroGas II and the Slovak Republic. She also testified that intervening in the international arbitration to assert the estate's rights to the talc claims would cost between $1.5 and 2 million in legal fees, a sum the estate could not afford. The Trustee explained in her Notice of Proposed Abandonment that "the estate ha[d] no resources with which to pursue the Talc Claims." (App. 146–47). Finally, the Trustee testified that she considered different agreement offers from EuroGas II and the Slovak Republic, but ultimately chose the EuroGas II offer.

Initially, the Slovak Republic offered to fund any adversary proceedings necessary to determine the estate's ownership in the talc claims and then to purchase the talc claims if the Trustee discovered the estate was entitled to them. As already described, EuroGas II made a competing offer to pay the Trustee $250,000 and to have TEG withdraw Claim 1-1 if the Trustee agreed to abandon the talc claims. The Trustee accepted this offer and executed the Agreement with EuroGas II and filed her Notice of Abandonment with the bankruptcy court. The Slovak Republic then made a new offer to purchase the talc claims on a quitclaim basis for $250,000. The Trustee testified that she decided to maintain the Agreement with EuroGas II because she concluded that it was the best deal for the estate's creditors.

After considering all of the evidence, the bankruptcy court approved the Notice of Abandonment and granted the Motion to Approve Agreement. The

5

bankruptcy court approved the Notice of Abandonment pursuant to 11 U.S.C.

§ 554(a) because it determined that the talc claims were both "burdensome" and "of

inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The bankruptcy

court found that the Trustee's testimony at the hearing was credible. Based on that

testimony and other evidence presented at the hearing, the bankruptcy court made the

following findings:

1. It was uncertain whether the talc claims were property of the estate or whether they were abandoned in 2007.

2. The talc claims were, at the time, subject to litigation before the arbitration tribunal.

3. The issue of ownership of the talc claims was complex.

4. It would require expensive litigation to determine whether the estate owned the talc claims.

5. If the Trustee had not abandoned the talc claims, she would have had to either initiate or defend litigation about the ownership of the talc claims.

6. It was uncertain whether the Trustee would be successful in litigation to determine the ownership status of the talc claims.

7. The talc claims were not easily administrable because they were not liquid claims.

8. TEG's claim (Claim 1-1) is not clearly objectionable, but instead has some basis for it.

Based on its findings, the court determined that the talc claims were burdensome and

of inconsequential value to the estate.

The bankruptcy court acknowledged that Slovak Republic offered to purchase

the talc claims for $250,000 on a quitclaim basis but explained that it would not

6

"second-guess the Trustee's business judgment when she has so credibly explained her grounds for decision." (App. 425).

The bankruptcy court also granted the Trustee's Motion to Approve Agreement by treating the Agreement as a Federal Rule of Bankruptcy Procedure Rule 9019 settlement agreement under In re Kopexa Realty Venture Co., 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997). In its appellate briefs to this court, the Slovak Republic argued that the bankruptcy court abused its discretion by approving the Agreement under Kopexa rather than treating it as a sale of assets. However, at oral argument, counsel for the Slovak Republic conceded that, if we find that the talc claims were properly abandoned, "that would be dispositive." (Oral Arg. Rec., 7:10-7:31). We agree that our holding that abandonment is proper resolves this appeal and therefore do not address the Slovak Republic's Rule 9019 argument.

### D. The Bankruptcy Appellate Panel's Opinion

The Slovak Republic appealed the bankruptcy court's order to the BAP, and EuroGas II responded with a motion to dismiss the Slovak Republic's appeal for lack of standing. The BAP issued an opinion that drew two, alternative conclusions. First, the BAP held that the Slovak Republic lacked prudential standing to appeal the bankruptcy court's order. Second, the BAP held that the Slovak Republic's arguments failed on the merits because the bankruptcy court did not abuse its discretion by authorizing the Trustee to abandon the talc claims or by approving the Agreement.

7

The BAP held that the Slovak Republic lacked prudential standing because it was not a "person aggrieved," meaning it failed to demonstrate that its rights were "directly and adversely affected pecuniarily by the decree or order of the bankruptcy court." In re Am. Ready Mix, Inc., 14 F.3d 1497, 1500 (10th Cir. 1994). The BAP determined that the Slovak Republic was not aggrieved by the bankruptcy court's approval of the Agreement as an unsecured creditor because the Agreement increased dividends paid to unsecured creditors without creating any demonstrable harm. Second, the BAP determined that the Slovak Republic abandoned its argument that it was aggrieved by the Agreement as a participant in the international arbitration by failing to raise that point at oral argument.[2]

In the alternative, the BAP concluded that the Slovak Republic's arguments failed substantively. The BAP held that the bankruptcy court did not abuse its discretion by authorizing the trustee to abandon the talc claims because it agreed with the bankruptcy court that the talc claims were burdensome and of inconsequential value to the estate. The BAP next held that the bankruptcy court did not abuse its discretion by evaluating the Agreement as a settlement rather than a sale and properly applied the Kopexa factors.

The Slovak Republic now appeals to this court, arguing that it has standing to appeal and that the bankruptcy court erred by authorizing the Trustee to abandon the talc claims.

---

[2] We do not address this abandonment argument.

8

## II.    DISCUSSION

In bankruptcy appeals, this court independently reviews the bankruptcy court's orders, examining legal determinations de novo and factual findings for clear error.  FB Acquisition Prop. I, LLC v. Gentry, 807 F.3d 1222, 1225 (10th Cir. 2015).  "The BAP is a subordinate appellate court not entitled to deference, but its rulings are often persuasive."  C.W. Mining Co. v. Aquila, Inc., 625 F.3d 1240, 1244 (10th Cir. 2010).

As a threshold matter, we assume without deciding that the Slovak Republic has prudential standing to appeal the bankruptcy court's order.  Prudential standing is a question of law that the court considers de novo.  In re Weston, 18 F.3d 860, 862 (10th Cir. 1994).  This circuit has adopted the rule that appellate review of a bankruptcy court order is limited to "persons aggrieved" by that order.  In re C.W. Mining Co., 636 F.3d 1257, 1260 (10th Cir. 2011).  A "person aggrieved" is a person whose rights or interests are "directly and adversely affected pecuniarily by the decree or order of the bankruptcy court."  Id.  This standing rule is a prudential limitation, not an Article III limitation.  Id. at 1260 n.5.  Because prudential standing is non-jurisdictional, we may assume without deciding that its elements are met.  Id.  We take that approach in this case and assume that the Slovak Republic is a person aggrieved.[3]  Accordingly, we also deny Euro Gas II's motion to dismiss.

---

[3] The Slovak Republic argues that the BAP exceeded its jurisdiction by addressing the merits after dismissing the appeal for lack of prudential standing.  Because the

Moving to the merits, we conclude that the bankruptcy court did not error by authorizing the Trustee to abandon the talc claims because the talc claims were burdensome to the estate.

The Slovak Republic asserts that the bankruptcy court reversibly erred when it authorized the Trustee to abandon the talc claims. Section 554(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

11 U.S.C § 554(a). We agree with the bankruptcy court that the Trustee properly exercised its authority to abandon the talc claims under section 554(a) because they were burdensome to the estate.

The parties disagree over the correct standard of review: The Slovak Republic argues that our review is de novo; EuroGas II and the Trustee urge application of the abuse-of-discretion standard. The BAP likewise identified abuse of discretion as the standard of review for considering a bankruptcy court's rulings on abandonment. But it seems to us that each of these views may be too simplistic. When deciding whether to allow or disallow a trustee to abandon an asset, a bankruptcy judge must tackle four kinds of issues—the first legal, the second factual, the third a mixed question of law and fact, and the fourth discretionary. Cf. U.S. Bank Nat'l Assoc. v. Village at Lakeridge, LLC, 138 S. Ct. 960, 965–69 (2018) (analyzing the legal, factual, and

---

"person aggrieved" standing is prudential and not derived from Article III, the BAP had jurisdiction to consider the merits in the alternative.

mixed questions that a bankruptcy judge must answer to decide whether a particular creditor is a "non-statutory insider"). In our case, it seems that a bankruptcy court must (1) identify the legal definition of the terms "burdensome" and "inconsequential," (2) make findings of fact about the contested asset, (3) determine whether its findings of fact satisfy the legal test for whether an asset is "burdensome" or "inconsequential," and, finally, (4) if it concludes that the property is burdensome or inconsequential, determine if the trustee abused its discretion ("may abandon") by choosing to abandon the asset. In such a case, appellate courts should treat the steps in the decision-making process as distinct, applying the appropriate standard of review to each. See id. We follow that approach here.

The first step is to identify the definition of the terms "burdensome" or "inconsequential," a legal determination we review de novo. See id. at 965; 11 U.S.C. § 554(a). We focus on "burdensomeness" for this case. Section 554 "serves the purpose of expeditious and equitable distribution by permitting the trustee to abandon property that consumes the resources and drains the income of the estate." In re Smith-Douglass, Inc., 856 F.2d 12, 16 (4th Cir. 1988). Property is burdensome to an estate if the expected cost of administering the asset would exceed the expected benefit. In re K.C. Mach. & Tool Co., 816 F.2d 238, 246 (6th Cir. 1987). The cost of administering an asset might exceed the benefit when the asset is encumbered with liens in excess of its value, Federal Land Bank of Berkeley v. Nalder, 116 F.2d 1004 (10th Cir. 1941); In re Rich, 510 B.R. 366 (Bankr. D. Utah 2014), or when the value of the asset can be realized only through expensive litigation that may or may not result in

11

recovery, <u>In re Blumenberg</u>, 263 B.R. 704 (Bankr. E.D.N.Y. 2001).  In short, determining whether an asset is burdensome to the estate requires the bankruptcy court to look at the big picture and consider an asset's value, encumbrances, and options (or lack thereof) for liquidation.  If, overall, abandoning the asset will bring about a better result for creditors than administering it, the asset may be abandoned. We find no error of law in the bankruptcy court's determinations below.

Second, a bankruptcy judge must make findings of fact about the contested asset that will help it determine if the asset meets the definition above.  This might include the asset's market value, liquidity, salability, or encumbrances.  We review these purely factual findings for clear error.  <u>U.S. Bank Nat'l Assoc.</u>, 138 S. Ct. at 966.  Here, the bankruptcy court found the following basic facts:

1. It was uncertain whether the talc claims were property of the estate or whether they were abandoned in 2007.

2. The talc claims were, at the time, subject to litigation before the arbitration tribunal.

3. The issue of ownership of the talc claims is complex.

4. It would require expensive litigation to determine whether the estate owned the talc claims.

5. If the Trustee had not abandoned the talc claims, she would have had to either initiate or defend litigation about the ownership of the talc claims.

6. It was uncertain whether the Trustee would be successful in litigation to determine the ownership status of the talc claims.

7. The talc claims were not easily administrable because they were not liquid claims.

8. TEG's claim (Claim 1-1) is not clearly objectionable, but instead has some basis for it.

12

The bankruptcy court did not clearly err by making any of these findings. Id. at 966 (defining a clear error review as review "with a serious thumb on the scale for the bankruptcy court").

The Slovak Republic argues that the fifth and seventh findings are incorrect because the Trustee could have easily administered the talc claims and avoided litigation by selling them to the Slovak Republic via quitclaim deed. But, in a case like this one, a quitclaim deed does not guarantee a litigation-free transaction. Although a quitclaim deed often protects the grantor from liability, it does not protect the grantor from being forced to participate in litigation between third parties arguing over the ownership of the quitclaimed asset. At the time the bankruptcy court made its findings, the talc claims were the focus of the international arbitration and the subject of aggressive and conflicting complex claims. It was reasonable for the bankruptcy court to find that neither the Slovak Republic nor EuroGas II was going to rest until the ownership of the talc claims was finally decided. It was also reasonable for the bankruptcy court to find that the Trustee may be obligated to appear on behalf of the estate in the arbitration or other litigation between the Slovak Republic, EuroGas I, and/or EuroGas II if she attempted to sell the estate's interests in the talc claims via quitclaim. Thus, it was not clear error for the bankruptcy court to find that, if the Trustee had not abandoned the talc claims, she would have had to participate in expensive litigation to determine the ownership of the claims and that the talc claims were difficult to administer.

Third, a bankruptcy judge must determine whether its findings of fact satisfy the legal test for whether an asset is "burdensome" or "inconsequential," a mixed

question of fact and law. The standard of review that applies to mixed questions depends on the nature of the question. Mixed questions that require courts to "expound on the law" are reviewed de novo, whereas questions that require courts to immerse themselves in "case-specific factual issues" and "marshal and weigh evidence" are reviewed for clear error. U.S. Bank Nat'l Assoc., 138 S. Ct. at 967. The mixed question in this case required the bankruptcy judge to apply the facts it found about the talc claims to its definitions of "burdensome" and "inconsequential," primarily factual work. Accordingly, we review that decision for clear error. Id. at 967–69.

It was not clear error for the bankruptcy court to conclude that the talc claims were burdensome. As mentioned above, a burdensome analysis takes into account all of the hurdles involved in administering an asset to determine if the expected cost of administering it would exceed the expected benefit. In re K.C. Mach. & Tool Co., 816 F.2d 238, 246 (6th Cir. 1987). If, after considering an asset's value, encumbrances, and options for liquidation, it seems that abandonment will bring more money into the estate than administering the asset, then the asset may be abandoned.

The Trustee could not sell or liquidate the talc claims without becoming embroiled in expensive litigation, and the estate had no resources with which to pursue the talc claims. The greatest value we can place on the talc claims on this record is $250,000 because that is what the Slovak Republic, the only bidder, offered to pay for them. At oral argument, counsel for EuroGas II stated that a win against the Slovak Republic in the arbitration proceedings would result in a damages award

14

in the "hundreds of millions of dollars," but statements by counsel at oral argument are not evidence. Versarge v. Twp. of Clinton N.J., 984 F.2d 1359, 1370 (3d Cir. 1993) ("[U]nsubstantiated arguments made in briefs or at oral argument are not evidence to be considered by this Court."); British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978), cert. denied, 440 U.S. 981 (1979) ("[L]egal memoranda and oral argument are not evidence."). Thus, it is defensible to conclude that abandoning the talc claims was the most lucrative option for creditors. While pursuing title to or attempting to sell the talc claims would have cost the estate litigation expenses, abandoning the talc claims awarded the estate $250,000 and relieved the estate of a $113 million claim against it.[4] Therefore, if sold, the talc claims were worth perhaps $250,000, but abandonment of the talc claims resulted in a dismissal of a claim to the bankruptcy assets of approximately $113 million plus receipt of $250,000 to the estate from EuroGas II. The bankruptcy court did not commit clear error by finding that the talc claims were burdensome to the estate because the cost of administering the talc claims exceeded their value.

Fourth, if the factual predicate exists for abandonment (if the asset at issue is burdensome or of inconsequential value to the estate), the bankruptcy court must decide whether to approve the abandonment. We review that decision for an abuse of

---

[4] The Slovak Republic argues that it objected to Claim 1-1 and still believes that it is invalid. However, at the time the Trustee decided to abandon the talc claims, Claim 1-1 was valid and had to factor into the Trustee's decision-making process. Further, it was not error for the bankruptcy court here to have made a finding that "TEG's claim (Claim 1-1) is not clearly objectionable, but instead has some basis for it." (App. 450)

15

discretion.  See In re Interpictures Inc., 217 F.3d 74, 76 (2d Cir. 2000).  However, the Slovak Republic has not argued that the bankruptcy court erred in this ultimate decision.  It contests only that the talc claims were neither burdensome nor of inconsequential value, which we have already rejected.

## III.    CONCLUSION

For the foregoing reasons, we deny EuroGas II's motion to dismiss for lack of standing and vacate the BAP's order of dismissal.  We remand the case to the BAP with instructions to affirm the bankruptcy court's order.

Entered for the Court


David M. Ebel
Circuit Judge

*The Slovak Republic v. Loveridge*, No.17-4197
**BACHARACH**, J., concurring in the order and judgment.

This appeal grew out of the bankruptcy court's approval of the trustee's agreement with EuroGas II, which disposed of claims over talc deposits in the Slovak Republic. The Slovak Republic appealed the bankruptcy court's ruling to the Bankruptcy Appellate Panel, which concluded that (1) the Slovak Republic lacked prudential standing to challenge the bankruptcy court's approval of the agreement and (2) the bankruptcy court did not abuse its discretion when approving the trustee's abandonment of the talc claims. The majority declines to decide the issue of prudential standing but upholds the bankruptcy court's approval of the abandonment. I agree with the well-reasoned order and judgment and write separately only to address the Slovak Republic's prudential standing to appeal.

Prudential standing turns on whether the Slovak Republic was "aggrieved" by the bankruptcy court's order. In my view, the Slovak Republic has adequately alleged facts showing aggrievement from the bankruptcy court's order.

* * *

Under the agreement leading to this appeal, the trustee abandoned the talc claims in exchange for EuroGas II's payment of $250,000 and the withdrawal of a creditor's claim against the estate for $113 million. The

Slovak Republic, a creditor of the bankruptcy estate, alleges that the trustee could have obtained greater value for the estate by disposing of the talc claims through competitive bidding. The threshold issue is whether this allegation satisfies the Slovak Republic's burden to establish prudential standing to appeal.[1]

In bankruptcy appeals, our requirements for standing exceed those of Article III. *In re C.W. Mining Co.*, 636 F.3d 1257, 1260 n.5 (10th Cir. 2011). In these appeals, the appellant must demonstrate that it is aggrieved by the bankruptcy court's order. *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1500 (10th Cir. 1994); *see Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir. 1989) (adopting the "person aggrieved" standard). An appellant is considered "aggrieved" if its rights are impaired. *In re Am. Ready Mix*, 14 F.3d at 1500.

In this appeal, we must consider this standard in light of the Slovak Republic's status as an unsecured creditor. Unsecured creditors generally have a "direct pecuniary interest in a bankruptcy court's order transferring assets of the estate." *In re P.R.T.C., Inc.*, 177 F.3d 774, 778 (9th Cir. 1999); *see also Kane v. John-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988) ("As a general rule, creditors have standing to appeal orders of the

---

[1] The Slovak Republic also bases prudential standing on how the order would affect arbitration proceedings. We need not consider this argument.

2

bankruptcy court disposing of property of the estate because such orders directly affect the creditors' ability to receive payment of their claims."). Despite this general rule, the Bankruptcy Appellate Panel concluded that the Slovak Republic lacked a direct pecuniary interest in the order because the agreement had benefited unsecured creditors.

In considering this conclusion, we engage in de novo review. *Opportunity Fin., LLC v. Kelley*, 822 F.3d 451, 457 (8th Cir. 2016). For this review, we assume that the Slovak Republic's relevant allegations are true and construe them in the Slovak Republic's favor. *See Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 366 (5th Cir. 2015) (stating that under the aggrievement test for prudential standing, the court must accept the appellant's material allegations as true and construe them favorably toward the appellant).

Applying de novo review, I would conclude that the Slovak Republic has adequately alleged aggrievement from the bankruptcy court's order. The Bankruptcy Appellate Panel reached a contrary conclusion by failing to credit the Slovak Republic's allegations.

In both bankruptcy court and on appeal to the Bankruptcy Appellate Panel, the Slovak Republic alleged

- a valuation of the talc claims beyond what EuroGas II had paid for them,

- the trustee's failure to maximize the value of the talc claims by refusing to sell them through competitive bidding, and

3

- the invalidity of the $113 million claim against the estate.

If these allegations are credited, a court could reasonably make two factual findings:

1. The trustee could have obtained more money for the talc claims than she did.

2. If the trustee had obtained more money for the talc claims than she did, the Slovak Republic would have obtained more money for its unsecured claim.

If a court made these findings, approval of the agreement would have harmed the Slovak Republic because the estate could otherwise have obtained more money for unsecured creditors through the use of competitive bidding. The actual agreement generated $250,000 for the estate and the withdrawal of a substantial claim against the estate. But the Slovak Republic alleges that it and EuroGas II have placed a far greater value on the talc claims. Even EuroGas II appears to agree, conceding that it values the talc deposits in the hundreds of millions of dollars.[2]

If the Slovak Republic were to prove its allegations, a fact-finder could ultimately conclude that the estate's unsecured creditors would have obtained more money through competitive bidding. *See In re DCA Dev.*

---

[2] At oral argument, counsel for EuroGas II and the trustee stated that EuroGas II believed that a win against the Slovak Republic in the arbitration proceedings would result in a damages award in the "hundreds of millions of dollars."

*Corp.*, 489 F.2d 43, 46 n.10 (1st Cir. 1973) (holding that an unsecured creditor satisfied the aggrievement test for prudential standing because its allegations indicated that the trustee might have obtained greater value for the assets). The Slovak Republic has adequately alleged aggrievement from the challenged order, and the bankruptcy court's ultimate assessment on the merits does not preclude appellate standing. *See In re DBSD N. Am., Inc.*, 634 F.3d 79, 89–90 (2d Cir. 2011) (concluding that a creditor's allegations about the value of its claim triggered appellate standing under the "aggrievement" test even though the bankruptcy court ultimately regarded the claim as worthless). Thus, the Bankruptcy Appellate Panel should not have dismissed the appeal for lack of prudential standing.